Robert C. JOHNSON, Plaintiff,

v.

John ASHCROFT, Attorney General; John W. Snow, Secretary of the Treasury; Mark W. Everson, Commissioner; United States Tax Court; and the United States of America; Individually and in their official capacities; Defendants.

No. C.A. 5:03–2559–26BC.

United States District Court, D. South Carolina, Orangeburg Division.

June 17, 2004.

Robert C. Johnson, Orangeburg, SC, pro se.

John Douglas Barnett, J. Strom Thurmond, Jr., Columbia, SC, for defendants.

## AMENDED ORDER ADOPTING THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

FLOYD, District Judge.

This matter is before the Court for review of Magistrate Judge Joseph R. McCrorey's report and recommendation ("the report") made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(e) D.S.C.

The magistrate judge makes only a recommendation to the Court, to which any party may file written objections .... The Court is not bound by the

recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia,* 791 F.Supp. 137, 138 (D.S.C. 1992) (citations omitted).

The United States Magistrate Judge has filed a detailed and comprehensive report wherein Plaintiff's complaint was fully reviewed. As a result of his review, the Magistrate Judge recommends that the Motion to Dismiss filed by Defendants on October 9, 2003, be granted.

Plaintiff was apprised of his right to file objections to the report and has done so in a twenty-four (24) page Response Memorandum filed with the Clerk on November 20, 2003.

█ In light of the standard set out above, the Court has reviewed, *de novo,* the report and the objections thereto as well as the complaint filed by Plaintiff. Following a thorough review, this Court cannot find any basis upon which Plaintiff should be allowed to go forward with this lawsuit. As analyzed by Magistrate Judge McCrorey, the doctrine of *res judicata* clearly applies to this case and requires dismissal of the Complaint without prejudice. Therefore, the Court will accept the report and order that Defendants' Motion

to Dismiss be granted. In light of this dismissal, all pending motions filed by Plaintiff should be rendered moot.

IT IS THEREFORE ORDERED that the report be accepted, Plaintiff's objections be overruled, the report be incorporated herein, and Defendants' Motion to Dismiss be granted. ·

IT IS FURTHER ORDERED that the dismissal of this action shall be without prejudice so that Plaintiff may pursue such Collection Due Process (CDP) relief as may yet be available.

IT IS FURTHER ORDERED that all pending motions filed by Plaintiff are hereby rendered moot.

## Report and Recommendation

McCROREY, United States Magistrate Judge.

The Plaintiff, Robert C. Johnson (Johnson) has brought this *pro se* action against the United States of America, and the United States Attorney General, the Secretary of the Treasury and the Commissioner of the Internal Revenue Service (IRS) (hereinafter, "the Defendants"). Pursuant to Title 28 United States Code section 636(b)(1)(B), and Local Rule 73.02(B)(2)(e) D.S.C., this magistrate judge is authorized to review pretrial matters in *pro se* cases and to submit findings and recommendations to the District Court.

### *BACKGROUND—A TAX DISPUTE*

On July 28, 2003, the IRS sent Johnson a form Notice of its intention to levy against any state tax refunds which Johnson might receive unless he paid the outstanding balance for tax year 1984. Johnson has attached the first page of the Notice to his Complaint. [1–1, Attachment A to Complaint.] The Notice also directed Johnson's attention to an enclosed copy of IRS Publication 594 ("The IRS Collection

Process"). This Publication explains the various procedures used to collect overdue taxes and the available recourse for a taxpayer who objects to a pending collection activity.[1]

Rather than seek appropriate relief under Publication 594, Johnson commenced this action. Since February, 2002, Johnson has filed over a dozen actions in this Court.[2] They have all involved Johnson's income tax returns from tax years 1981 through 1986. In some of these cases, Johnson has complained of a balance sought by the IRS for tax year 1991.

The Court may take judicial notice of these prior civil actions and the information contained in their records. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.1989); *Shoup v. Bell & Howell*, 872 F.2d 1178, 1182, 1187 (4th Cir.1989); *Daye v. Bounds*, 509 F.2d 66 (4th Cir. 1975); *Mann v. Peoples First National Bank & Trust Co.*, 209 F.2d 570, 572 (4th Cir.1954).

The 1984 tax deficiency resulted from Johnson's participation in Oasis Date Associates (ODA). Johnson's liability for this deficiency is now settled as a matter of law. *See Johnson v. Commissioner*, 55 Fed.Appx. 204, 2003 WL 231617 (4th Cir. 2003). It is *res judicata* in this and all his other cases.

Unable to contest his tax liability, Johnson instead argues that the Defendants violated his civil rights by imposing a tax deficiency on him which differs from the amount which should be his share under the ODA Tax Court decision entered on July 19, 2001. This theory of recovery is without merit for reasons set forth below. First, however, a review of the ODA tax proceedings is necessary.

### OASIS DATE ASSOCIATES

In July, 1984, Johnson subscribed by mail to Oasis Date Associates (ODA), a California Limited Partnership, and thereafter made substantial capital contributions to the partnership.[3] Johnson claimed

---

**1.** Publication 594, for example, explains that taxpayers may request Collection Due Process (CDP) Hearings. In most cases the hearing is held in advance of the actual levy, unless the object is state tax refunds. In the case of state tax refunds, the hearing follows the levy.

**2.** For convenience in discussing Johnson's parallel actions in this Court, the following numerical designations will be used after the initial reference to the given case: *Johnson v. IRS*, C/A No. 5:02–0304–22BC (*Johnson One*); *Johnson v. Behrens, et al.*, C/A No. 5:02–1435–22BC (*Johnson Two*); *Johnson v. Commissioner*, C/A No. 5:02–3935–23BC (*Johnson Three*); *Johnson v. Commissioner*, 5:02–4291–23BC, (*Johnson Four*); *Johnson v. South Carolina*, C/A No. 5:02–4292–23BC (*Johnson Five*); *Johnson v. Commissioner*, C/A No. 5:03–0303–23BC (*Johnson Six*); *Johnson v. Commissioner, et al*, C/A No. 5:03–2284–23BC, (*Johnson Seven*); *Johnson v. Ashcroft, et al.*, C/A No. 5:03–2559–23BC, the present case (*Johnson Eight*); *Johnson v. Wells, et al*, C/A No. 5:03–2923–17BD (*Johnson Nine*); *Johnson v. Bush, et al*, C/A No.

5:03–2996–23BC (*Johnson Ten*); *Johnson v. South Carolina*, C/A No. 5:03–3084–23BC (*Johnson Eleven*); *Johnson v. Duffy, et al*, C/A No. 5:03–3268–17BC (*Johnson Twelve*). Johnson has also filed two unsuccessful motions to recall references to the Bankruptcy Court. *Johnson v. IRS, et al.*, 5:03–mc–0130, and *Johnson v. South Carolina*, 5:03–mc–0122. Johnson's cases Four, Six, Seven, Eight and Eleven have now been re-assigned from the Honorable Patrick M. Duffy, United States District Judge, to the Honorable Henry F. Floyd, United States District Judge.

**3.** The foregoing history is derived from one of Johnson's prior cases. Fifteen (15) months before filing the present Complaint, Johnson brought action in this Court against certain principals of ODA and various affiliates of American Agri–Corp, *Johnson, et al., v. Behrens, et al.*, (*Johnson Two*). The case was transferred from this Court to the United States District Court for the Central District of California by order of the Honorable Cameron M. Currie on October 15, 2002. In this

tax deductions on his own subsequent income tax return(s), relying upon the 1984 ODA partnership return.[4]

In September, 1989, Johnson received a "Notice of Beginning of an Administrative Proceeding," known as a 1787(C) Letter, from the TEFRA Section of the Office of the IRS District Director in Fresno, California.[5] The letter advised Johnson that the ODA partnership return for tax year 1984 would be examined.

The Internal Revenue Code (IRC) devotes a Sub–Chapter of Chapter 63 to the "Tax Treatment of Partnership Items." *See* 26 U.S.C. § 6221 through § 6234. Under 26 U.S.C. § 6223(a) partners must

receive notice both of the beginning and the completion of administrative proceedings. This duty of notice is limited if a partnership has more than one hundred (100) partners and a given partner owns less than a one percent (1%) interest. It is not clear whether ODA had at least one hundred partners. Similarly, Johnson's interest as a percentage of the partnership is not known. The important point is that Johnson indisputably received the initial notice of an administrative proceeding.

In partnership administrative proceedings, the "tax matters partner" plays the leading role.[6] The tax matters partner can

---

prior action, Johnson attached several documents to his Complaint: Attachment "B" was a copy of the "Confidential Private Placement Memorandum" of Oasis Date Associates issued May 30, 1984, describing the organization of American Agri–Corp and the structure of the limited partnership; Attachment "D" consisted of correspondence reflecting Johnson's subscription to the partnership in July, 1984, and his subsequent capital contributions.

**4.** As attachments to a Motion to Consolidate in *Johnson v. Commissioner,* 5:02–4291–23BC (*Johnson Four* ) [Document No. 9–1, pp. 49–57] Johnson provided portions of his 1981, 1984 and Amended 1981 income tax returns.

**5.** TEFRA is the acronym for the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97–248, September 3, 1982. *See Johnson Four* [Document 9–1, the Notice is found at pp. 63–64]

**6.** The governing statute is 26 U.S.C. § 6224, which provides in pertinent part:
(a) Participation in administrative proceedings.—Any partner has the right to participate in any administrative proceeding relating to the determination of partnership items at the partnership level.
(b) Partner may waive rights.—
(1) In general.—A partner may at any time waive-
(A) any right such partner has under this subchapter, and
(B) any restriction under this subchapter on action by the Secretary.

(2) Form.—Any waiver under paragraph (1) shall be made by a signed notice in writing filed with the Secretary.
(c) Settlement agreement.—In the absence of a showing of fraud, malfeasance, or misrepresentation of fact—
(1) Binds all parties.—A settlement agreement between the Secretary or the Attorney General (or his delegate) and 1 or more partners in a partnership with respect to the determination of partnership items for any partnership taxable year shall (except as otherwise provided in such agreement) be binding on all parties to such agreement with respect to the determination of partnership items for such partnership taxable year. An indirect partner is bound by any such agreement entered into by the pass-thru partner unless the indirect partner has been identified as provided in section 6223(c)(3).
(2) Other partners have right to enter into consistent agreements.—If the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with any partner with respect to partnership items for any partnership taxable year, the Secretary or the Attorney General (or his delegate) shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement. Except in the case of an election under paragraph (2) or (3) of section 6223(e) to have a settlement agreement described in this paragraph apply, this paragraph shall apply with respect to a settle-

enter into settlement agreements which, with certain exceptions, can bind all other partners. Direct participation by these other partners is allowed, of course. It may also be waived. One or more partners also have the option to enter into settlement agreements separate from agreements reached by the tax matters partner

There is no evidence that Johnson took part in the ODA administrative proceedings. He does not claim to have done so. Johnson does not allege that he was a "notice partner" or member of a "notice group," both of which are exempt from the binding authority of the tax matters partner under § 6224(c)(3)(A). Johnson does not claim that he formally disavowed the authority of the tax matters partner to enter into a settlement agreement under § 6224(c)(3)(B). The inference arises, therefore, that Johnson was bound by any settlement agreement made by the tax matters partner.

On May 13, 1991, the TEFRA Section of the Office of the IRS District Director in Fresno, California, sent to Johnson its "Notice of Final Partnership Administrative Adjustment (FPAA)."[7] The Notice indicates that a copy was mailed to the tax matters partner on April 10, 2001. This letter disallowed two items: (1) an investment expense of more than Four Million

Dollars ($4,000,000.00) in tax year 1984; and (2) qualified investment income of almost Twenty Four Thousand Dollars ($24,000.00) for the same tax year.

The FPAA was not necessarily the final word. FPAAs are subject to judicial review under 26 U.S.C. § 6226. The tax matters partner must file a petition within ninety (90) days after mailing of the FPAA. See 26 U.S.C. § 6226(a). "Notice" partners may also seek judicial review by filing their own petitions no later than sixty (60) days after the deadline for tax matters partners, which is to say a total of one hundred fifty (150) days from mailing of the FPAA. As mentioned above, remaining partners have the option to enter into separate agreements with respect to their partnership interests. These agreements can be given retroactive effect, if the request is made within the one hundred fifty (150) period after mailing of the FPAA. 26 U.S.C. § 6224(c). Thus, Johnson had the option to enter into such a separate agreement at any time during the five months following April 10, 2001. Johnson does not allege that he sought any such agreement.

Apparently, the ODA tax matters partner filed a petition for judicial review. Johnson provides a copy of the United States Tax Court decision in *Oasis Date Associates, Frederick H. Behrens, Tax Matters Partner, v. Commission of Inter-*

---

ment agreement entered into with a partner before notice of a final partnership administrative adjustment is mailed to the tax matters partner only if such other partner makes the request before the expiration of 150 days after the day on which such notice is mailed to the tax matters partner.

(3) Tax matters partner may bind certain other partners.—

 (A) In general.—A partner who is not a notice partner (and not a member of a notice group described in subsection (b)(2) of section 6223) shall be bound by any settlement agreement-

(I) which is entered into by the tax matters partner, and
(ii) in which the tax matters partner expressly states that such agreement shall bind the other partners.

(B) Exception.—Subparagraph (A) shall not apply to any partner who (within the time prescribed by the Secretary) files a statement with the Secretary providing that the tax matters partner shall not have the authority to enter into a settlement agreement on behalf of such partner.

7. *See Johnson Four* [9–1, pp. 65–72]

*nal Revenue,* Tax Court Docket No. 15037–91 filed on July 19, 2001. [1–1, Exhibit B to the Complaint.] After ten years of litigation and/or negotiation, the order finds that the ODA partnership return for 1984 contained claims for liabilities in the amount of Two Million Nine Hundred Sixty–Five Thousand Seven Hundred Fourteen Dollars ($2,965,714) which "lack economic substance." Once final, this order of the Tax Court allowed the Commissioner to assess tax deficiencies.

### JOHNSON'S TAX DEFICIENCIES

The foregoing history of the ODA tax proceedings is made necessary by Johnson's frequent references to it in his Complaint. In fact, however, this history has only limited relevance to the present case. Johnson could have remained a party to the ODA tax litigation. A comparison of the FPAA with the final Tax Court decision suggests that he might have benefitted from doing so. The original FPAA had disallowed over Four Million Dollars ($4,000,000.00) claimed in the ODA partnership return and had found "false or fraudulent items." Ten years later, the ODA tax matters partner obtained a decision which simply held that claimed liabilities in the amount of Two Million Nine Hundred Sixty Five Thousand Seven Hundred Fourteen Dollars ($2,965,714) "lack economic substance" with no further mention of falsehood or fraud.

Johnson chose a different course of action, however. On October 14, 1992, he filed a voluntary petition in the United States Bankruptcy Court for the District of South Carolina. *In re Johnson,* 92–BK–75816 (Bankr.D.S.C.). This act, as a matter of law, disassociated Johnson from the ODA tax proceeding, with its benefits and risks.

The filing of a bankruptcy petition converts partnership items into nonpartnership items for tax purposes. The Secretary of Treasury is authorized to promulgate rules concerning the status of partnership items in the interest of enforcing the Internal Revenue Code. *See* 26 U.S.C. § 6231(c)(2).[8] A regulation was adopted in 1987 which states:

> Bankruptcy. The treatment of items as partnership items with respect to a partner named as a debtor in a bankruptcy proceeding will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending on or before the last day of the latest taxable year of the partner with respect to which the United States could file a claim for income tax due in the bankruptcy proceeding shall be treated as nonpartnership items as of the date the petition naming the partner as debtor is filed in bankruptcy.

*See* "Bankruptcy and receivership" § 301.6231(c)–7T, 52 Fed.Reg. 6779 at 6793 (March 5, 1987).

As a nonpartnership interest, Johnson's stake in ODA became subject to a new limitations period—namely, one year after the date of conversion from partnership to nonpartnership status. *See* 26 U.S.C. § 6229(f).[9] Johnson received a Chapter

---

**8.** 26 U.S.C. § 6231(c)(2) (Items may be treated as nonpartnership items) provides:

To the extent that the Secretary determines and provides by regulations that to treat items as partnership items will interfere with the effective and efficient enforcement of this title in any case described in paragraph (1), such items shall be treated as nonpartnership items for purposes of this subchapter.

**9.** 26 U.S.C. § 6229(f) provides.

(1) Items becoming nonpartnership items.—If before the expiration of the period otherwise provided in this section for assessing any tax imposed by subtitle A with respect

Seven discharge on February 24, 1993. *See Johnson v. Commissioner*, C/A No. 5:02–3935–23BC (*Johnson Three* ). On May 26, 1993, the IRS issued to Johnson a "Notice of Deficiency" in the amount of Twenty One Thousand Sixty Three Dollars ($21,063.00) for tax year 1984.[10] This Notice was timely under 26 U.S.C. § 6229(f), by a margin of almost five months.

Johnson challenged this tax deficiency (and deficiencies in tax years 1981, 1982, 1985 and 1986) in the United States Tax Court in *Johnson v. Commissioner*, T.C. Docket No. 93–18457. At some point in the litigation, the IRS evidently offered a settlement agreement by which Johnson would acknowledge a tax deficiency in 1981 of Four Hundred Ninety One Dollars ($491.00) and Eight Thousand Two Hundred Eighty Six Dollar ($8,286.00) in 1984. [1–1, Attachment C to the Complaint.] It seems that the agreement was never concluded. (At least, Johnson's copy of the proposal is unsigned.)

In an Order signed on October 18, 2002, the Tax Court found no deficiencies for 1982, 1985 or 1986, but ruled that Johnson owed deficiencies in the amounts of $491.00 for 1981 and $21,063.00 for 1984.[11] It would appear that by not accepting the agreement, Johnson gained nothing with respect to tax year 1981 and wound up

charged with a tax deficiency in 1984 that was almost three times the proposed sum.[12]

Johnson appealed this adverse decision to the United States Court of Appeals for the Fourth Circuit which affirmed the decision of the Tax Court on February 4, 2003. *See Johnson v. Commissioner*, 55 Fed.Appx. 204, 2003 WL 231617 (4th Cir. 2003). Johnson sought no further review. He is bound by that decision. Put simply, Johnson's tax liability for 1984 is fixed as a matter of law. Any perceived "inconsistency" with settlements or Tax Court decisions affecting other parties provides no basis for relief from the final decision of the Fourth Circuit Court of Appeals.

Johnson also mounted a collateral attack upon the tax deficiencies. He moved the United States Bankruptcy Court to reopen his case, so that he could file an adversary proceeding. Leave was granted. *Johnson v. Commissioner*, Adv. Proc. No. 02–80185–W (*In re Johnson*, 92–BK–75816). On August 26, 2002, however, the Honorable John E. Waites, Judge of the United States Bankruptcy Court, granted summary judgment to the Defendant concluding that the post-discharge Notice of Assessment was not in violation of any statutory stay or discharge injunction.

---

to the partnership items of a partner for the partnership taxable year, such items become nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, the period for assessing any tax imposed by subtitle A which is attributable to such items (or any item affected by such items) shall not expire before the date which is 1 year after the date on which the items become nonpartnership items. The period described in the preceding sentence (including any extension period under this sentence) may be extended with respect to any partner by agreement entered into by the Secretary and such partner.

**10.** *See Johnson Four* [9–1, pp. 61–62.]

**11.** *See Johnson Four* [9–1, pp. 25–26, Dismissal Order, T.C. Docket No. 93–18457.]

**12.** It is altogether possible that the proposed settlement could have been based on the figures contained in the ODA Tax Court Order. In other words, the "inconsistency" upon which Johnson bases his present Complaint might not have arisen, had Johnson accepted the proposed compromise agreement. Since the copy of the draft agreement bears no date, however, such a conclusion would be speculative at best and is certainly unnecessary for disposition of the Defendants' Motion to Dismiss.

Also Judge Waites concluded that Johnson was not entitled to a recovery under 26 U.S.C. § 7433 which is part of the Omnibus Taxpayer's Bill of Rights, Pub.L. 100–647, November 10, 1988.

In November, 2002, Johnson appealed from Judge Waites' decision by filing *Johnson Three*. On August 5, 2003, the undersigned filed a Report and Recommendation to affirm the decision of the Bankruptcy Court, and on August 19, 2003, the Report and Recommendation was adopted by the Honorable Patrick M. Duffy, United States District Judge. The matter is currently pending in the United States Court of Appeals for the Fourth Circuit. *See Johnson v. Commissioner*, 03–2088.

### PRO SE COMPLAINT

▇▇▇ Johnson is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir.1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe, supra*. Even under this less stringent standard, however, a *pro se* complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v.*

*City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### PROCEDURAL HISTORY

#### Injunctive Relief

In commencing this action, Johnson sought a Preliminary Injunction and Temporary Restraining Order to block any levy upon state tax refunds. [1–1, Attachment A to Complaint, and 2–1.] On August 7, 2003, the undersigned filed a Report with a recommendation that the injunctive relief be denied. [5–1.] On August 12, 2003, Johnson filed Objections. [6–1.] In an Order filed on August 18, 2003, District Judge Duffy adopted the Report and Recommendation and denied Johnson's Motion. [7–1.]

#### Defendants' Motion to Dismiss

On October 9, 2003, the Defendants filed a Motion to Dismiss with a Supporting Memorandum. [8–1] The undersigned issued an Order on October 15, 2003, under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), notifying Johnson of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the Motion to Dismiss. [9–1.] On October 24, 2003, Johnson filed an "Objection" in response to the Motion to Dismiss and a Motion to Order Responsive Pleading. [11–1, 11–2.]

The Defendants' Motion asserts a lack of jurisdiction over the United States Attorney General, the Secretary of the Treasury, and the Commissioner of the Internal Revenue Service and requests dismissal of these Defendants. In fact, the record does not disclose that Johnson has filed any proof of service in this case as required by Rule 4(1) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.). Literally, therefore, this Court has not yet acquired jurisdiction over these individual Defendants. Although Johnson may still

effect service upon them within one hundred twenty (120) days from issuance of the summons, the merits of the jurisdictional argument need not be addressed. This Report will recommend dismissal of the entire action as to all named Defendants.

 The Defendants also move to dismiss this entire action on the basis of *res judicata.* In a general sense, the Defendants' position is correct and the Motion to Dismiss should be granted. The precise component of the *res judicata* doctrine applicable in this case is known as "judicial estoppel." The Fourth Circuit Court of Appeals succinctly explained "judicial estoppel" in *Sedlack v. Braswell,* 134 F.3d 219 (4th Cir.1998):

> "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation," and is designed to prevent a party from "playing fast and loose" with the courts and "protect the essential integrity of the judicial process." Although "[c]ourts have had difficulty in formulating a specific test for determining when judicial estoppel should be applied," at least three elements must always be satisfied. First, the party sought to be estopped must assert a position inconsistent with that taken in prior litigation and the position must be one of fact rather than law or legal theory. Second, the prior inconsistent position must have been accepted by the court. And third, the party sought to be estopped must intentionally have misled the court to gain unfair advantage.

134 F.3d at 224 (citations omitted).

Johnson claims that the Notice issued on July 28, 2003, is "inconsistent" with the results reached in the ODA Tax Court proceedings. This discrepancy should come as no surprise. After ten years of litigation and/or negotiation (1991–2001),

the initial FPAA was superseded by a Tax Court decision which apparently approved a compromise settlement. The ODA Tax Court proceeding was a judicial review of a partnership administrative adjustment which, *by statutory definition,* is a "determination of partnership items at the partnership level." *See* 26 U.S.C. § 6224(a) *supra.* On October 14, 1992, by filing his bankruptcy petition, Johnson converted his "partnership item" to a "nonpartnership item" and severed his tax liability from the ODA partnership proceedings.

Of the three elements constituting judicial estoppel in *Sedlack, supra,* the first two are obviously present in this case. First, Johnson's position during the ODA administrative adjustment process *as a matter of fact* was a passive acquiescence in the strategy taken by the tax matters partner. Johnson had the right to participate in the administrative adjustment, to disavow the authority of the tax matters partner to bind him, and/or to reach a separate agreement with the IRS. Johnson took none of these steps and simply remained silent. Both the ODA principals and the IRS were entitled by this inaction to conclude that Johnson agreed, and intended, to be bound by any settlement achieved by the tax matters partner.

When the tax matters partner filed a petition for judicial review of the FPAA, the case moved to the Tax Court. Again, Johnson remained silent. He had the right to seek a separate agreement at any time within one hundred fifty (150) days after the FPAA was mailed to the tax matters partner. By taking no action, Johnson allowed the Tax Court to conclude he would be bound by any court decree. This fact satisfies the second element of judicial estoppel—the prior inconsistent position must have been accepted by the court.

The third element of judicial estoppel is an intention to mislead the court (in the prior action) in order to gain unfair advantage. This intention can easily be inferred from Johnson's conduct. By remaining silent and waiving opportunities to participate, Johnson first mislead the Tax Court and other parties into a belief that he would be bound by the actions of the tax matters partner. Then, by filing a bankruptcy petition, he mislead the Tax Court and other parties into a belief that he had no intention to be bound by the administrative adjustment or the Tax Court decision. Instead, he intended to deal directly with the IRS with regard to his nonpartnership item.

Now Johnson seeks to disregard his own conduct and legal consequences flowing therefrom in order to complain of a discrepancy between the amounts claimed in the July 28th Notice and the figures contained in the ODA Tax Court decision. Johnson is judicially estopped from doing so. The doctrine of *res judicata* applies to this case and requires dismissal of Johnson's Complaint without prejudice, so that Johnson may pursue such Collection Due Process (CDP) relief as may yet be available.

### RECOMMENDATION

It is recommended that the **Defendants' Motion to Dismiss be granted.** Johnson's Motion to Order Responsive Pleading should be and is denied. The Plaintiff's attention is directed to the important notice on the next page.

November 5, 2003.

*Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So*

The petitioner is hereby notified that any objections to the attached Report and Recommendation must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed.R.Civ.P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed.R.Civ.P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See Mathews v. Weber*, 423 U.S. 261, 270–271, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

During the ten-day period, *but not thereafter*, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See Keeler v. Pea*, 782 F.Supp. 42, 43–44 (D.S.C.1992). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See United States v. Schronce*, 727 F.2d 91, 94 n. 4 (4th Cir.), *cert. denied, Schronce v. United States*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984); and *Wright v. Collins*, 766 F.2d 841, 845–847 nn. 1–3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Re-

port and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. *Howard v. Secretary of HHS*, 932 F.2d 505, 508–509 (6th Cir.1991). *See also Praylow v. Martin*, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 466 (1985). In *Howard, supra*, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. \* \* \* This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. \* \* \* We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord Lockert v. Faulkner*, 843 F.2d 1015, 1017–1019 (7th Cir.1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. \* \* \* A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir.1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and *Goney v. Clark*, 749 F.2d 5, 7 n. 1 (3rd Cir.1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

This notice apprises the petitioner of the consequences of a failure to file specific, written objections. *See Wright v. Collins, supra;* and *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2nd Cir.1989). Filing by mail pursuant to Fed.R.Civ.P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk

United States District Court

901 Richland Street

Columbia, South Carolina 29201